**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**


**DIANNE LINN, INDIVIDUALLY, AND**
**AS WRONGFUL DEATH BENEFICIARY**
**& EXECUTRIX OF THE ESTATE OF**
**DECEDENT, JOHN DAVID LINN, AND**
**AMY LINN, INDIVIDUALLY,**                                 **PLAINTIFFS,**


**VS.**                                          **CIVIL ACTION NO. 1:04CV181-P-D**


**UNITED STATES OF AMERICA,**
**SUNBELT BUILDERS, INC.; CROSS**
**ELECTRICAL SERVICE, LLC; AND**
**VICTAULIC COMPANY OF AMERICA,**                      **DEFENDANTS.**



**MEMORANDUM OPINION**


This matter comes before the court upon The United States of America's Motion to

Dismiss or, in the Alternative, for Summary Judgment [38-1] regarding the plaintiffs' Amended

Complaint. Upon due consideration of the motion and the responses filed thereto, the court is

prepared to rule.

**I. FACTUAL BACKGROUND**

On June 1, 2004 Dianne Linn, individually and as a wrongful death beneficiary of John

David Linn, deceased, and Amy Linn filed the instant case against the United States of America;

Sunbelt Builders, Inc.; Cross Electrical Services, LLC; and Victaulic Company of America. With

permission of the court, the plaintiffs filed their Amended Complaint on January 12, 2005.

According to the complaints, John David Linn, as an employee of Kenny Betts Field Service, suffered a fatal accident while performing checks upon the high pressure air system called the Centralized Aircraft Support System ("CASS") located beneath the flight line at Columbus Air Force Base on August 4, 2001. This system is utilized to assist jets in take-off. Linn was performing these checks as an employee of Kenny Betts Field Service pursuant to a contract between Sunbelt Builders, Inc. and the United States for repair and maintenance work on the CASS.

Kenny Betts Field Service was a subcontractor of Sunbelt with regard to the repair and maintenance work on the CASS which was accessed through manholes approximately 18 to 20 feet below the flight line surface. On August 4, 2001, the CASS was pressurized in order to check the system of air leaks. While Linn was exiting the CASS following his check for leaks in manhole number 6, a compressed, pressurized air explosion occurred causing Linn to be ejected up through the manhole into the air and onto the runway surface. Consequently, Linn suffered fatal injuries to his head.

According to the plaintiffs, none of the defendants warned Linn that he was not supposed to enter the CASS while pressurized because it was extremely dangerous. The plaintiffs' causes of action are based upon their basic assertion that all of the events resulting in Linn's death occurred upon the premises of Columbus Air Force Base, which is the property of the United States and at all times the United States had an affirmative duty to warm Linn and others of dangerous conditions on its premises, to adequately supervise its premises to avoid or eliminate dangerous conditions, and to adequately train and supervise individuals, such as Linn, contractors, and military personnel regarding such dangers.

The claims asserted in the Amended Complaint are: (1) failure to train against the United States; (2) failure to train and warn against the United States; (3) failure to warn about and abate dangerous conditions against the United States; (4) negligent and reckless failure to supervise against the United States; (5) negligent and reckless failure to warn against the contractor Sunbelt Builders, Inc.; (6) negligent and reckless failure to supervise against Sunbelt Builders, Inc.; (7) negligence against Cross Electrical Services, LLC; (8) products liability against Victaulic, the manufacturer of the gasket and coupling system which malfunctioned to cause the explosion; and (9) breach of warranty against Victaulic.

More specifically, the plaintiffs allege that the United States is liable for failure to train because it did not insure that the contractors and its employees were trained regarding the dangers inherent with the Centralized Aircraft Support System. The plaintiffs cite a June 19, 2002 citation issued against Columbus Air Force Base by OSHA which includes a finding that the United States failed to train affected individuals about the hazards with permit space operations.

As to the claim against the United States for failure to train and warn, the plaintiffs allege that since Columbus Air Force Base contracted with Sunbelt Builders, Inc. to perform maintenance and repair work on the CASS, who in turn subcontracted portions of that work to Kenny Betts (for whom Linn was employed), the United States failed to warn Sunbelt Builders, Inc. that the workplace required permits and that permit entry was allowed only through compliance with a permit space program meeting the requirements of 29 C.F.R. § 1910.146(c)(8). Again, the plaintiffs refer to the OSHA citation that admonished the United States for failure to train and warn the contractor about the dangers inherent in the particular

permit space.

The claim for failure to warn about and abate dangerous conditions against the United States alleges similar omissions.[1]

The plaintiffs' claim against the United States for negligent and reckless failure to supervise avers that the United States had an affirmative duty to supervise the activities of its employees and contractors to ensure that the activities on the Columbus Air Force Base were conducted in a safe manner. This affirmative duty arises because the flight line of the air force base is a restricted area requiring the presence of military or other authorized personnel to escort and monitor the activities of all individuals on the flight line. The plaintiffs allege that the United States breached this duty.

The plaintiffs assert that in addition to the United States, the contractor, Sunbelt Builders, Inc., is liable for negligent and reckless failure to warn because as the general contractor on the CASS project, they were supposed to warn Kenny Betts Field Service, the subcontractor for whom Linn was employed, of the inherent dangers associated with the confined spaces in which the repair and maintenance work was to be completed by Kenny Betts Field Service. The plaintiffs aver that the contractor breached this duty which proximately caused Linn's death.

The contractor is liable for negligent and reckless failure to supervise, argues the plaintiffs, for breaching their duty to train and/or supervise its subcontractors of the dangerous conditions in the 18-to-20-ft-deep manholes below the flight surface.

The plaintiffs aver that Cross Electrical Services, LLC, as an electrical contractor on the CASS project, possessed blueprints of the CASS warning of the dangers associated with

---

[1] This claim seems redundant.

personnel being present in the confined spaces of the manholes while the CASS was pressurized. Despite this possession of blueprints, Cross failed to warn Kenny Betts Field Service of these inherently dangerous conditions.

According to the plaintiffs, Victaulic is liable under the standards of product liability for negligent design, manufacture, assembly, and distribution of a gasket and coupling system that failed to perform its intended purpose of sealing the joints of the CASS compressed air line system on which Linn was working. Furthermore, the plaintiffs posit that Victaulic is liable for breach of warranty regarding the defective gasket and coupling assembly that caused Linn's death.

The United States filed the instant motion to dismiss the Amended Complaint for lack of subject matter jurisdiction or for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56, respectively. Essentially, the Government argues that Linn was an employee of an independent contractor and thus the United States is not liable under the independent-contractor exception to the Federal Tort Claims Act 28 U.S.C. §§ 1346(b) and 2671.

In response, the plaintiffs admit that the United States is not liable under the FTCA for the negligent acts of a contractor. They argue, however, that the United States is liable for its own acts of negligence – citing *Coho Resources, Inc. v. McCarthy,* 829 So.2d 1 (Miss. 2002) – irrespective of any tortious behavior by the other defendants.

In essence, it is the plaintiffs' position that the independent-contractor exception to the FTCA does not bar the instant case against the United States because the United States, through the Department of the Air Force, exercised effective control over the CASS project thereby converting Linn into an employee of the United States. The following are the factors that the

plaintiffs argue evidence control by the United States: (1) the United States retained operational control of the CASS system with Sunbelt Builders, Inc.'s access to the system limited to those times when the United States made it available on a nonexclusive basis; (2) the United States provided detailed plans and specifications which Sunbelt was required to follow expressly in order to complete the CASS project; (3) the United States maintained complete oversight and control over the CASS work evidenced by the documents submitted by the Contracting Officer to Sunbelt; (4) the Contracting Officer and other Columbus Air Force Base personnel attended weekly progress meetings to discuss the CASS projects' progress, problems associated therewith, and scheduling around the flight training missions; and (5) during the construction of the CASS, the United States retained responsibility for inspecting the work done until final acceptance by the Contracting Officer.

According to the plaintiffs, the Contracting Officer had enormous control and oversight power over the contractor on the CASS project, including: (1) the ability to assess liquidated damages and withhold payments to Sunbelt for failing to comply with wage and hour laws; (2) the right to approve all machinery and mechanical or other equipment proposed by Sunbelt; and (3) the ability to remove any employee of Sunbelt who the Contracting Officer deemed incompetent, careless, or otherwise objectionable.

The United States rebuts these arguments first by pointing out, correctly, that the determination as to whether one is an employee of the United States or of an independent contractor is determined by federal law, not state law. *Logue v. United States*, 412 U.S. 521 (1973); *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997); *Cavasos By and Through Cavasos v. United States*, 776 F.2d 1263, 1264 (5th Cir. 1985). This is true even though state law

governs the nature and extent of any recovery for negligent or wrongful conduct. *Bursztajn v. United States*, 367 F.3d 485 (5th Cir. 2004). Thus, the plaintiffs arguments based on the Mississippi Supreme Court's decision in *Coho, supra* are irrelevant with regard to whether Linn was an employee of an independent contractor or the United States. Second, the United States advances that despite the allegations regarding control discussed above, the plaintiffs have offered insufficient evidence to prove that Columbus Air Force Base employees actually controlled Sunbelt Builders, Inc.'s "day-to-day" detailed, physical performance during the construction project which is required by the U.S. Supreme Court in *U.S. v. Orleans*, 425 U.S. 807, 814 (1976) to allow liability under the FTCA.

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(1) Standards

Given that federal courts are courts of limited jurisdiction and can only hear cases falling within Article III of the Constitution, Rule 12(b)(1) allows motions for dismissal, either upon the party's or the court's own motion, based on the argument that the federal court does not have the right to exercise its limited jurisdiction because of the subject matter presented in a complaint. In other words, the objection presented by a Rule 12(b)(1) motion is that the district court does not possess the authority to hear or decide the subject matter of the case before it. *E.g., Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Mississippi*, 143 F.3d 1006 (5th Cir. 1998).

Typically, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is used when the movant asserts that the complaint neither involves a federal question, complete diversity of citizenship of the parties, nor the requisite amount in controversy. However, courts have occasionally allowed dismissal under Rule 12(b)(1) that go to the merits of a case, *e.g.,*

when a plaintiff's claims are barred by sovereign immunity. *Lundeen v. Mineta*, 291 F.3d 300 (5th Cir. 2002).

At the same time, motions under Rule 12(b)(1) should not be confused with those under Rule 12(b)(6) for failure to state a claim. Rule 12(b)(1) motions involve the determination of whether a plaintiff has a right to be before the particular court; whereas, Rule 12(b)(6) motions involve adjudication upon whether a cognizable legal claim has been stated. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case."); *Baker v. Carr*, 369 U.S. 186 (1962) (though a failure to state a claim may call for a judgment on the merits, no merits determination, other than whether an federal claim is frivolous or insubstantial, is pertinent to whether the court possesses jurisdiction over the subject matter); *Lewis v. Knutson*, 699 F.2d 230 (5th Cir. 1983) (if an attack on the face of the complaint defeats jurisdiction, then the case should be dismissed under Rule 12(b)(1); however, if the case survives a facial attack, the failure to state a cognizable claim should be disposed of by a Rule 12(b)(6) motion on the merits); *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), *cert. denied* 454 U.S. 897 (when the movant's challenge to jurisdiction also challenges the existence of a federal cause of action, the appropriate procedure for the court is to deal with the attack as one on the merits – assuming the claim is not immaterial or frivolous or made for the sole purpose of securing federal jurisdiction).

Stated differently, if deciding upon a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction mandates a decision upon the core merits of the case, said decision should await determination under Rule 56. *Clark v. Tarrant County, Texas*, 798 F.2d 736 (5th Cir. 1986).

The court concludes that the Government's Rule 12(b)(1) motion is in reality a motion on the merits and should be decided using summary judgment standards than those under Rule 12(b)(1). Thus, the portion of the motion seeking dismissal for lack of subject matter should be denied. In any event, a motion to dismiss for lack of subject matter jurisdiction in this case should be denied because the plaintiffs' claims, on their face, do fall within the appropriate subject matter over which this court possesses jurisdiction since they are levied against the United States and, the plaintiffs argue, the independent-contractor exception to the FTCA does not apply to prevent waiver of sovereign immunity.

## B. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id.* Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5 Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5 Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5 Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*., at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a

matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 939 (WD Tex. 1982).

Alternative to their motion to dismiss for lack of subject matter jurisdiction, the Government argues that summary judgment is proper regarding the plaintiffs' claims against the United States because, given that the independent-contractor exception applies to prevent liability under the FTCA, the plaintiffs' cannot establish the essential elements of a breach of duty owed to Linn by the United States. *Washington v. Armstrong World Industry*, 839 F.2d 1121, 1122 (5th Cir. 1988).

1. Fed. R. Civ. P. 56(f)

The plaintiffs contend not only that they can establish a breach of a duty owed by the United States to Linn, but also that the court should refuse the application for summary judgment and should order a continuance under Rule 56(f) to permit full discovery to be taken on the issues raised and implicated by the United States's motion including jurisdiction, the duty owed to the plaintiffs' decedent, proximate cause, the legal liability of other defendants and its relation to the United States, contractual duties, and the OSHA investigation.

The United States parries that under Rule 56(f), the plaintiffs have not adequately demonstrated why they need additional discovery and how that discovery will likely create a genuine issue of material fact. Nor, argues the United States, have the plaintiffs demonstrated with the required specificity how the requested discovery pertains to the pending motion by submitting the required affidavit. The Government also suggests that the plaintiffs have been

dilatory in seeking the relevant discovery given that the court stayed all discovery not pertaining

to the immunity defenses asserted by the United States by Order of November 8, 2004 and no

discovery activity has appeared on the docket despite the court's allowance of discovery on the

very issues which the plaintiffs claim they need. In any event, the Government argues that the

court already has before it all of the information necessary to make a ruling on the immunity

issues.

> Rule 56(f) provides:
>
> Should it appear from the affidavits of a party opposing the motion that
> the party cannot for reasons stated present by affidavit facts essential
> to justify the party's opposition, the court may refuse the application
> for judgment or may order a continuance to permit affidavits to be
> obtained or depositions to be taken or discovery to be had or make
> such other order as is just.

Fed. R. Civ. P. 56(f). "The purpose of Rule 56(f0 is to provide non-movants with a much needed

tool to keep open the doors of discovery in order to adequately combat a summary judgment

motion." *Wichita Falls Office Ass'n v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992), *cert.*

*denied*, 508 U.S. 910 (1995). Such "continuance of a motion for summary judgment for purposes

of discovery should be granted almost as a matter of course" unless "the non-moving party has

not diligently pursued discovery of the evidence." *International Shortstop, Inc. v. Rally's Inc.*,

939 F.2d 1257, 1267 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

The three general requirements for a continuance of discovery under Rule 56(f) are: "(I)

requesting extended discovery prior to the court's ruling on the summary judgment; (ii) put[ting]

the trial court on notice that further discovery pertaining to summary judgment is being sought;

and (iii) demonstrating to the trial court specifically how the requested discovery pertains to the

pending motion." *Wichita Falls*, 978 F.2d at 919. In addition, "the non-movant must diligently pursue relevant discovery – the trial court need not aid non-movants who have occasioned their own predicament through sloth." *Id*.

The court concludes that neither the plaintiffs nor Victaulic (who filed an opposition to the instant motion on the grounds it wished normal discovery to be completed before it could ascertain whether it opposed the motion) have met the requirements to justify a continuance of the court's ruling on summary judgment. This is because (1) the plaintiffs never filed the requisite affidavit demonstrating with specificity what additional discovery it required; (2) the plaintiffs have not otherwise shown exactly what additional discovery is needed; (3) the court only stayed discovery on issues not pertaining to immunity and the record does not reflect any discovery activity regarding immunity, thus, the court concludes that the plaintiffs have not been diligent in seeking the discovery for which they ask; and (4) it appears that the court has all the information before it needed to rule upon the motion for summary judgment.

## 2. Immunity Under the FTCA

"[T]he United States, as sovereign, is immune from suits save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *U.S. v. Mitchell*, 445 U.S. 535, 538 (1980). Courts must strictly construe all waivers of the Government's sovereign immunity and must resolve all ambiguities in favor of the sovereign. *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

In the Federal Tort Claims Act, Congress has waived sovereign immunity to an extent by granting consent for the Government to be sued for acts committed by any "employee of the Government while acting in the scope of his office or employment." 28 U.S.C. § 1346(b).

Liability will be imposed under the FTCA on the Government only when a private person would be liable to the plaintiff under the same circumstances. *E.g., FDIC v. Meyer*, 510 U.S. 471 (1994). By its terms, the FTCA does not extend to acts of independent contractors. *Orleans*, 425 U.S. at 813-814.

"The critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed, physical performance of the individual." *Linkous v. U.S.*, 142 F.3d 271, 275 (5th Cir. 1998) (citing *Orleans*, 425 U.S. at 814)."The distinction between the servant or agent relationship and that of an independent contractor turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Logue v. United States*, 412 U.S. 521, 527 (1973) .

In *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997), the Fifth Circuit Court of Appeals cited the factors listed Restatement (Second) of Agency § 220 to distinguish between an employee and an independent contractor under the FTCA. Section 220 lists the following factors as relevant to this distinction:

> (a) the extent of control which, by agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the discretion of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplied the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (I) whether or not the parties believe they are creating a relationship

of master and servant; and
(j) whether the principal is or is not a business.

*Linkous*, 142 F.3d at 276.

If the Government lacks to power to control the detailed, physical performance of the individual, then the court must look to other factors before deciding the individual's status. *Id.* Though such a determination does not require mathematical precision, if the Government lacks the requisite control over the individual, and several of the § 220 factors weigh in favor of status as an independent contractor, then the trial court must conclude that the individual is not an employee but rather an independent contractor. *Id.*

The Fifth Circuit in *Rodriguez* also referenced the explanatory comments to the Restatement (Second) of Agency regarding § 220 which lists the following factors evidence employee status:

(1) the work does not require one who is highly educated or skilled;
(2) the work is typically done by an employee in the locale, rather than an independent contractor;
(3) the employer supplies the tools, instrumentalities, or place of work;
(4) the employment is for a considerable period of time with regular hours;
(5) the method of payment is by the hour or month;
(6) the work is full-time employment by one employer;
(7) the work is part of the employee's regular business; and
(8) the parties believe they have created an employment relationship.

*Rodriguez*, 129 F.3d at 765.

Referencing all of these factors, the Government in the present case cite several facts that are undisputed by the evidence. These facts include: (1) Columbus Air Force Base entered into a binding, legal construction contract with Sunbelt Builders, Inc. as an independent prime/general contractor for the repair and renovation of the CASS system; (2) Sunbelt Builders, Inc. was

awarded a "firm fixed price" construction contract in the amount of $1, 190,000.00 based on its expertise and ability to handle the repair and renovation project; (3) Sunbelt Builders, Inc. was responsible for the direct physical supervision over the contracted work and the nature, detail, and method of the contracted work and provided at all times an on-site supervisor (Declaration of Neil L. Cole, Director of Business Operations at CAFB referencing the contract between the United States and Sunbelt); (4) Sunbelt Builders, Inc., under the terms of the contract assumed all responsibility for the safety of on-site personnel, including its employees; (5) Sunbelt Builders, Inc., a large construction firm headquartered in Sonoita, Arizona, was experienced in large construction contracts, pressure piping, and high voltage electricity; (6) The project was initially supposed to be completed in 180 days; (7) CAFB employees did not supervise or direct Sunbelt Builders, Inc.'s daily work or that of its subcontractors; (8) Sunbelt Builders, Inc. was responsible for employing and paying its employees, its sub-contractors and their employees; (9) Sunbelt Builders, Inc. assumed control of the CASS project and its work site while the contracted work was being performed. (10) Sunbelt Builders, Inc. worked on the CASS repair and renovation project after hours, 4:30 p.m., and on weekends when no CAFB employees were present; (11) Under the terms of the contract, Sunbelt Builders, Inc. was responsible for providing all plant, labor, materials, tools, equipments, machinery, and transportation for the contracted repairs and renovations to the CASS and provided an on-site supervisor; (12) Sunbelt Builders, Inc. maintained proof of liability insurance, as did its subcontractors including Linn's employer, Kenny Betts Field Service, and Sunbelt had to provide a performance bond; (13) The CASS is operated and maintained by DynCorp through an aircraft maintenance contract; (14) Sunbelt Builders, Inc. and its subcontractors had worked on the CASS for about seven months

before the accident occurred on August 4, 2001; (15) No CAFB employees were at the work site when the accident occurred and Sunbelt Builders, Inc. was in control of the CASS system and work site at that time; (16) The accident occurred while the contracted work was being performed; and (17) Sunbelt Builders, Inc.'s project manager and on-site supervisor inspected the CASS before construction began and was warned about the dangers of working in and around the CASS and its manholes.

As stated above and repeated here, the plaintiffs argue that the following factors evince the United States's control over the detailed, physical performance of Linn: (1) the United States retained operational control of the CASS system with Sunbelt Builders, Inc.'s access to the system limited to those times when the United States made it available on a nonexclusive basis; (2) the United States provided detailed plans and specifications which Sunbelt was required to follow expressly in order to complete the CASS project; (3) the United States maintained complete oversight and control over the CASS work evidenced by the documents submitted by the Contracting Officer to Sunbelt; (4) the Contracting Officer and other Columbus Air Force Base personnel attended weekly progress meetings to discuss the CASS projects' progress, problems associated therewith, and scheduling around the flight training missions; and (5) during the construction of the CASS, the United States retained responsibility for inspecting the work done until final acceptance by the Contracting Officer.

To these factors, the Government responds that the retention of the right to inspect progress, to provide advice on contract provisions, and to order work stopped should safety violations occur is insufficient to constitute the control over the detailed, physical performance of Linn. *Pershing v. United States*, 736 F.Supp. 132, 133-134 (W.D. Tex. 1990); *Martinez v. United*

*States*, 661 F.Supp. 762, 764 (W.D. Tex. 1987).

The court agrees with the decisions in *Pershing* and *Martinez* and concludes that the §
220 factors discussed above, after considering the facts posed by the Government versus those
advanced by the plaintiffs, weigh heavily in favor of Linn being an independent contractor in
relation to the United States as opposed to an employee. Therefore, pursuant to the independent-
contractor exception to liability under the FTCA, the court concludes that the United States is
immune from liability for Linn's terrible and tragic death.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the United States of America's
Motion to Dismiss or, in the Alternative, for Summary Judgment [38-1] should be denied in part
and granted in part. Specifically, the motion to dismiss for lack of subject matter should be
dismissed; whereas, the motion for summary judgment should be granted. Therefore, the
plaintiffs' claims against the United States should be dismissed with prejudice as not cognizable
under the Federal Tort Claims Act. An Order shall issue forthwith,

**THIS DAY** of August 8, 2005.


/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE